

**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

---

*Jacob T. Elberg*  970 Broad Street, Suite 700  (973)645-3987
*Assistant U.S. Attorney*  Newark, NJ 07102

August 5, 2014

The Honorable Faith S. Hochberg
United States District Judge
Newark, NJ 07102

      Re:    <u>United States v. Maruk Masood; Crim. No. 11-271 (FSH)</u>

Dear Judge Hochberg:

      Please accept this letter in lieu of a more formal brief in opposition to defendant Maruk Masood's request for early termination of probation.  As set forth in more detail below, neither the conduct of defendant nor the interest of justice warrants the premature termination of defendant's term of probation.

      By way of background, on April 21, 2011, Maruk Masood pleaded guilty to a one-count Information charging conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1347.  More specifically, as detailed in the Presentence Investigation Report (PSR), Maruk Masood was the office manager in a medical office which she and her husband used to operate a health care fraud scheme that preyed on poor Medicaid recipients and used unqualified individuals posing as licensed physicians to defraud government health care programs and deprive thousands of patients of proper care.

      For at least 15 months, Yousuf Masood – Maruk Masood's husband – operated a complex and long-running scheme to defraud the government and mistreat more than 3,000 patients, preying on his poorest patients for his own greed.  During more than 20,000 fraudulent patient visits, unqualified individuals posing as legitimate medical personnel at Yousuf Masood's medical office selected what procedures should be ordered for the patients, including electrocardiograms, bronchodilation responsiveness tests, and transnasal eustachian tube inflation, among others.  PSR ¶ 36c.  The unqualified individuals decided what prescriptions to write for the patients, including prescriptions for Seroquel, Xanax, Cymbalta, Klonopin, Ambien, Zolpidem, Advair, Amlodipine, and Singulair, among others.  PSR ¶ 36b.  Although it would have been easy for Yousuf Masood to have provided guidance and supervision, the decisions made by the unqualified individuals were not checked by Yousuf Masood, who instead provided them with pre-signed prescription blanks with which to write the prescriptions.  PSR ¶¶ 36b, 58.  Often Yousuf Masood was not present at the medical practice at all while unqualified individuals were treating patients.  PSR ¶ 36d.  Even when he was present at the medical practice,

Yousuf Masood was generally not involved in the treatment of patients, electing to watch television in his personal office rather than treat patients or even supervise the treatment given by the unqualified individuals.  PSR ¶ 36d.

     As Yousuf and Maruk Masood were well aware, the individuals they hired were not only unlicensed, but unqualified.  Two of the three unqualified individuals had failed Step 1 of the United States Medical Licensing Association Medical Board Exams ("the Medical Boards").  One had failed Step 1 of the Medical Boards twice (and never passed the test), and the other had failed three classes in medical school before eventually graduating.  PSR ¶¶ 9, 10.  It was their lack of qualifications that made them perfect for Yousuf Masood's scheme – it meant that they would accept low wages (between $10 and $17 per hour), that they could be lured in by Yousuf Masood's false promises of training, and that when they realized what Yousuf Masood was doing, they were without viable alternatives to the illegal employment Yousuf Masood offered.  PSR ¶ 35.

     At sentencing before the Honorable Garrett E. Brown, U.S.D.J., the parties were in agreement that the appropriate Offense Level was 13 based upon the base offense level and amount of loss attributable to Maruk Masood, Maruk Masood's minor role in the offense, and the defendant's acceptance of responsibility.  The parties also agreed that the PSR properly placed the defendant in Criminal History Category I.  Under the Sentencing Guidelines, Maruk Masood therefore faced an advisory Guideline range of 12-18 months.

     Maruk Masood asked the Court for a variance to home confinement and probation, citing to her family situation as necessitating a below-Guideline sentence that did not include a term of imprisonment. At the time, the Government noted that it was troubling that Maruk Masood asked for leniency based on the emotional impact her arrest (and that of her husband) purportedly had on their children.  The Government noted that while it almost certainly true that their children have suffered tremendously, the decision for Yousuf and Maruk Masood to engage in crime was entirely their own.  Moreover, this was not criminal conduct that occurred over the course of only a day or even a week.  For more than a full year, Maruk Masood decided every day to go to the medical office and engage in fraud for her own financial benefit.  Although she likely believed she would never be caught, certainly she was smart enough to know the risks she and her husband, and their children, faced if their fraud was uncovered.

     What is more, the Government noted, this was not a case where the criminal conduct could be viewed as an effort to provide necessities for their family.  Even prior to the time period of the fraud, the Masoods lived in a $1.3 million house in Warren, New Jersey.  During the course of the scheme, they maintained their home in Warren while purchasing a $1.4 million house in Basking Ridge, New Jersey, and a vacation home in Florida – the latter two of which were purchased outright and without mortgages.

     However, cognizant of the fact that the Masoods had three young children, one of whom was very ill, that the Government asked this Court to impose a substantial sentence of imprisonment on Yousuf Masood, and considering Maruk Masood's family circumstances and the fact that her criminal conduct in this case was directed by her husband, the Government did not oppose Maruk Masood's request for a sentence of a substantial term of home confinement and probation in lieu of imprisonment.  The Court granted that request and on November 16, 2011, imposed a term of five years' probation.  Having already

received a substantial downward variance to probation, defendant now seeks to be released from serving even that full term of probation.

Title 18, United States Code, Section 3564 provides that a Court may terminate a term of probation if, after considering the factors set forth in 18 U.S.C. § 3553(a), it concludes that "such action is warranted by the conduct of the defendant and the interest of justice." 18 U.S.C. § 3564(c). Courts have routinely cautioned, however, that early termination of probation is warranted only occasionally when, for example, a defendant can demonstrate "changed circumstances" that would render the previously imposed term overly harsh and inappropriate. *See United States v. Atkin*, 38 Fed. Appx. 196, 198 (6th Cir. 2002) (*citing United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997)); *see also United States v. Mantovani,* 2009 WL 1748032, at *1 (D.N.J. June 19, 2009) (denying defendant's request for early termination of supervised release because defendant failed to demonstrate any "changed circumstances or exceptionally good behavior"); *United States v. Guilliatt*, 2005 WL 589354, at *1 (E.D. Pa. Jan. 18, 2005) ("[E]arly termination of probation should be ordered only in extraordinary circumstances.").[1] Here there are no such "changed or extraordinary circumstances."

Here, in addition to pointing to facts regarding her crime that were already present and accounted for when the Court imposed sentence, Maruk Masood points to little more than her compliance with the terms of probation as justification for the present motion. Defendant's compliance with the terms of probation is not a legitimate justification for terminating the remainder of her term. As one court in this district explained: "Merely complying with the terms of [defendant's] probation and abiding by the law are not in and of themselves sufficient to warrant early termination of probation; rather this is simply what is expected of Defendant." *United States v. Paterno*, 2002 WL 1065682, at *2 (D.N.J. April 30, 2002). Other courts are in accord. *See, e.g., Karacsonyi v. United States*, 152 F.3d 918, at *2 (2d Cir. 1998) ("Full compliance, after all, is merely what is expected of all people serving terms of supervised release."); *United States v. Tedesco,* 2010 WL 5249822, at * 2 (E.D. Pa. Dec. 22, 2010) ("Mere compliance with terms of supervision is not enough."); *United States v. Bailin*, 2008 WL 4279521, at *1 (S.D.N.Y. Sept. 18, 2008) ("Full compliance with the terms of probation . . . does not constitute the type of exceptional behavior entitling a defendant to early termination."); *United States v. Caruso*, 241 F. Supp.2d 466, 469 (D.N.J. Jan. 28, 2003) (same); *United States v. Rasco*, 2000 WL 45438, at *2 (S.D.N.Y. Jan. 19, 2000) (same).

In short, less than three years ago, the Court determined that a sentence of 5 years' probation promoted the sentencing objectives of punishment and deterrence. Although defendant's compliance with that sentence is commendable, she has not remotely demonstrated the type of exceptional circumstances necessary to justify terminating the remainder of her term of probation.

---

[1] In *United States v. Kay*, 283 Fed. Appx. 944 (3d Cir. 2008), the Third Circuit noted that it had not expressly set forth a "changed or extraordinary circumstances" standard, and did not do so in that case. The Court, however, noted that district courts in this circuit have used that standard in evaluating requests for early termination of probation.

      Defendant's request is particularly inappropriate in this case.   At sentencing, Maruk Masood argued that because of her family circumstances, a sentence of imprisonment should be avoided, and assured the Court that the sentencing objectives of punishment and deterrence could still be attained, without punishing her children for her actions, through the imposition of a sentence of probation.   Now, the Court having relied on the availability of a substantial term of probation in electing not to impose a term of imprisonment, Maruk Masood attempts to parlay that into an argument that the substantial term of probation is unnecessary.   The Court was willing to vary downward – and the Government did not oppose a variance downward – based on the premise that given the unique family circumstances present in this case, a sentence of 5 years' probation could promoted the sentencing objectives of punishment and deterrence and serve as an appropriate sentence for Maruk Masood's role over the course of 15 months in a scheme to prey on poor patients and defraud the government while mistreating more than 3,000 patients, all for the greed of Maruk Masood and her husband.   The further reduction sought now by Maruk Masood would result in a sentence wholly inappropriate given her conduct, and the circumstances present do not justify early termination.

      Accordingly, defendant's request should be denied.

      Respectfully submitted,

      PAUL J. FISHMAN
      United States Attorney

      /s/ Jacob T. Elberg
By:   JACOB T. ELBERG
      Assistant U.S. Attorney